Thanks, Judge. I'm back on the record. Case number 221175, Sara Caruso v. Delta Air Lines, Inc. At this time, would counsel for the appellant introduce himself on the record to begin? Good morning, Your Honor. Eric LeBlanc on behalf of Plaintiff Appellant Sara Caruso. May it please the Court, may I please reserve two minutes for rebuttal? You may. Disputed issues of material facts dominate the record in this case. In fact, Delta essentially did not perform an investigation into a claim of sexual harassment, and the little investigation that they did perform was completely botched and negligently done. In addition, Delta offered Ms. Caruso what essentially equated to no accommodation whatsoever when she made a request for reasonable accommodation relating to her PTSD that occurred as a result of her sexual assault. That's why this Court needs to reverse the lower court's decision and allow a jury to hear Ms. Caruso's case. As this Court knows, the summary judgment standard grants Ms. Caruso all facts and inferences in her favor as the nonmoving party. And summary judgment is inappropriate where there are genuine issues of material fact in dispute. Here, the two main anchoring claims that Ms. Caruso has is a sexual harassment claim under both Title VII and Mass General Laws 151B, as well as a disability discrimination claim, a failure to accommodate claim, under the ADA as well as 151B. In addition, Ms. Caruso has retaliation claims and aiding and abetting claims. We'll start with the sexual harassment claim. The sexual harassment claim, there are two issues before the Court. The first issue was whether or not the sexual conduct was unwelcome, and the second issue was whether or not Delta's investigation was negligent. Counsel, excuse me. I think there is actually a predecessor question as to whether the alleged assailant was a supervisor or a co-employee, because the difference is there are imposed different standards on Delta. We can agree to that proposition. Are you contesting or are you arguing that he is a supervisor, or do we have agreement that he was a co-worker? For purposes of this appeal, Judge, we are focusing on Mr. Lucas being a co-worker. We've reserved the right at the lower level relating to the supervisory status in light of the evidence that came out during deposition. Okay. Then before you reach your other two arguments, please tell us again the standard imposed on Delta for a co-worker's harassment. Sure. And the standard, again, the two issues that we have, and it was articulated in the Fort Scythe case out of this circuit, was we need to show Ms. Caruso was sexually harassed. It was sufficiently severe and pervasive that it was unwelcome. No, no, no. Don't you first have to give notice to Delta of the purported harassment? Yes, Judge Lynch, and that's been conceded in the papers, but we can… No. Exactly what notice of what was given when? Sure. So the notice that was given, Ms. Caruso gave notice as of August 4th and 5th, she gave notice to her boss, Amy Broach, that she believed that she was sexually assaulted overnight at the hotel in Dallas. She, by the end of the week, she had informed Delta that she believed that it was the first officer. However, there is some question in the record as to that issue. What happened next was Ms. Caruso went to rehabilitation, and when she came back within a week, Delta was in communication with the Dallas Police Department acknowledging that Mr. Lucas, their pilot, was a person of interest in the investigation of the sexual assault of Ms. Caruso. So the next issue we have to get at is whether or not the sexual assault or the sexual conduct was unwelcome. And again, under the Meritor case that was cited in our reply brief, the issue is not whether this was consensual or not. The issue is whether it was unwelcome. The evidence in the record, when viewed in the light most favorable to Ms. Caruso, indicates that Ms. Caruso was complaining about the issue as of the day upon her return from Dallas, and she continued to complain about the issue. I'm sorry. I'm sorry. She did not, on August 4th, August 5th, in her communications with the company, name the purported assailant, correct? She did not name the purported assailant at that time, correct. Okay. So what is it you say that they failed to do in the period between August 4th and 5th and the end of the week when you say, though I believe Delta contests this, that she first identified the first officer? Delta was attempting to reach out to the hotel, per their corporate policy, to obtain hotel key card swipes as well as video. They were told that Ms. Caruso needed to file a police report to do so. I'm sorry. This is in the period between August 4th and? August 4th to August 16th. I'm sorry. How is August 16th the end of the week? August 16th is where we have an email where Delta says that they're attempting to reach out to the hotel to obtain the hotel information and they need a police report filed by Ms. Caruso. Okay. What is the date you say that your client first notified Delta that she thought it was the first officer on that flight? Well, we would say by August 9th when the pilot indicated to Delta that he went back to her room with her after she made the claims that, at the summary judgment standard, Ms. Caruso gets a reasonable inference of notice. That being the case, at the very latest. I'm sorry. Just bear with me. Did she give them the notice or are you saying when he said he went back to the room with her, that was the notice? That was the initial form of notice. Ms. Caruso had no recollection at that time of what occurred that evening. So even assuming that that constitutes notice on August 9th, do your claims of Delta's failing to do an adequate response, do they start on August 9th? They start on or after August 9th. Correct, yes. Okay. So take us from August 9th forward. Sure. So as of August 9th, again, Delta was informed by Hyatt Hotels that they needed to have the victim submit a police report in order to obtain hotel key card swipes and video from the hotel. Delta did not inform Ms. Caruso of that need, instead allowing her to go to an inpatient rehabilitation facility that she could not make communication with the outside world with. Secondarily, Delta was offered the opportunity by Hyatt to actually view the videotape. Delta did not take that opportunity. They didn't tell Hyatt to flag any information, the videotape, or to flag the hotel key card swipes. Instead what they did was they put their head in the sand. In addition, after August 9th, Delta did not interview a single person relating to this alleged sexual assault. They did not interview Ms. Caruso. They did not interview any of the other flight attendants that were out with them. And they did not interview Mr. Lucas, the pilot. Mr. Lucas was only interviewed. Again, please just bear with me. I think what you have just said is that she did not name Lucas on August 9th, but that Lucas indicated they had had some sexual encounter. And from your point of view, that was sufficient notice to Delta that they then had to further investigate. Is that the theory? That's part of the theory. But, Judge, there are numerous opportunities where Delta would have had actual knowledge. And if I can continue to work through the question. No, I'm sorry. It's a different argument to say if they had done certain things, they would have had actual knowledge. But what is the first time your client says to Delta, the first officer is the guy who I believed assaulted me? Because on his account, there was no assault. There was a consensual sexual encounter. Sure. So at the very outside range, it was when she filed her claims in December of 2018. However, moving away from that, as of early October of 2018, so just a month and a half or two months after the assault, Delta was informed by the Dallas Police Department that James Lucas was a person of interest in the investigation because Ms. Caruso had discussed it with them. And the police department reached out to Delta in October asking for Mr. Lucas' contact information. And you'll see there's an email in the record where Delta responds to the Dallas Police Department saying, we understand Mr. Lucas is a person of interest. That would be that October date. The incident took place August, so two months later, that's when Delta for the first time knows about Lucas potentially involved. Correct. And even at that point in October, after October, Delta still does no interviews of anybody. They don't interview Lucas. They don't interview the flight attendants. They don't interview Ms. Caruso. In fact, the only time that Delta does interview Mr. Lucas was in April of 2019. So even if we use the December of 2018 date where they learned of it from Ms. Caruso directly, they still waited five months to interview Mr. Lucas. And when they interviewed Mr. Lucas, and you can see this in the appendix at page 140, they make the statement in an email to Mr. Lucas, we're not doing this as an investigation. We're doing this as a fact finding to support the defense of the claims being made against us. Delta did no investigation. Delta did nothing to look into the issues that Ms. Caruso was complaining of on three different occasions, one when they had actual knowledge. When was the first letter from counsel to Delta? I believe the first letter from counsel to Delta was in the end of October, beginning of November, but that was a request for personnel file. Whose? For Ms. Caruso's personnel file. All right, so that said nothing about Lucas? In the first letter, no. In the December letter, there were claims made against the first officer on the flight that Ms. Caruso was on that day. So what you're saying is that based on that call for documents from the Dallas police, Delta was or should have been on notice, and until December, until Lucas' name comes up again, they didn't do anything? Correct, they didn't do anything after two instances of actual notice, one from the police, one from Ms. Caruso herself. I'm sorry. I think what you're saying is it's a jury question whether a notice from the Dallas police that Lucas is a person of interest is sufficient notice to Delta that they need to investigate. Is that the argument? Because it's not a flat notice of an accusation of rape. But again, the notice could be the inference can be made when Lucas was the only person in her room. The inference can be made when the police indicated that Mr. Lucas was a person of interest in the investigation of the rape. And notice could be made as of December of 2018, and despite those three separate instances of notice, there was no investigation conducted. Okay, so what you're saying is there's a jury question because inferences can be drawn, especially when you put all three of these things together, that that is actual notice to Delta. Correct. That's correct. Okay, if the actual notice to Delta isn't until October, November, December, let's take December because that's the first letter from counsel, what is it that Delta is supposed to have done at that point? Sure, and under the Forsyth v. Wayfair case, at the very least, Delta needs to interview the suspect or the person of interest, and they did not. They did not interview him for any purpose of discipline at any point during this case. In fact, I think the Forsyth case and other cases from the First Circuit goes so far as to say an investigation is negligent. They interviewed him for purposes of defense of the claim, not for purposes of discipline or into the actual sexual assault. But does it matter what they call the interview? If it's a fact-finding interview, what difference does it make what they call it as long as they're looking for information? Well, sure, and again, Mr. Lucas himself testified, and it's in the record, that he was never investigated by Delta relating to these claims. That's his own testimony. Well, they asked him what happened. They asked him what happened. Correct, and when they asked him what happened, he gave a completely differing account of what he gave them in a written statement as of August 9th. And they still took no further action thereafter. And the reason why is because they were essentially having this interview with Mr. Lucas with the presumed idea that he was innocent, which goes against this Circuit's law on what a negligent investigation is. But when you say they took no action, you mean they took no disciplinary action against him. Well, the standard is prompt and effective action. They did take no action against him, but I'm saying that they did not even investigate the sexual assault allegations for purposes of discipline. But they took actions to protect her. They did not take actions to protect her, Judge. Well, they had a mediation where they came up with a plan of action. The plan of action that Delta came up with deals with the reasonable accommodation issue in this case. There was a reasonable accommodation in part designed to keep her away from him. There was actually no accommodation granted to Ms. Caruso. Ms. Caruso was granted things that every flight attendant gets, which is you can drop a flight, you can stay wherever you want, and you can take whatever transportation you want. But we can't promise that we're not going to discipline you, we can't promise that we're going to reimburse you for the hotel, and we can't promise that we're going to reimburse you for the shuttle. Counsel, to go back to Judge Thompson's point, the steps that were taken, whether or not you think they were reasonable accommodation, in fact kept her separated from him. She did not encounter him again. And I respectfully disagree, Your Honor. She was separated from him, but she was separated from him as a result of medical leave that was necessitated by the assault. I'm sorry. After that sexual encounter, whether it was totally consensual or not, she had no further contact with him on the job. Isn't that correct? There was no opportunity to, Judge. The reason why is because she was out on medical leave, and then she wasn't able to return to Delta until the accommodations got worked out. The accommodations issue took over six months, or five to six months to work out. And that's what kept Ms. Caruso away from Mr. Lucas, and that was the issue. It wasn't Delta's remedial measures. Well, they were working towards an accommodation in April and May, and they came up with this four or five-step plan. Yes. And she agreed to that at that time. Isn't that correct? She agreed to go back to her job, because that was the option that was given to her. But again, she was told, Your Honor, you either accept what we're giving you, or you don't have a job anymore. She had to take it. She had to take it to go back. So she didn't have the option. Otherwise, again, she would not have had her livelihood. Well, what did she say that she wanted instead of what they were presenting as an accommodation? What she wanted was the ability to not be forced on a flight, the same flight with Mr. Lucas. And that happened. It didn't, Your Honor. The potential was there. Delta wasn't willing to give Ms. Caruso notice of anything. So that was the first request. The second request was not be required to stay in the same overnight hotel as Mr. Lucas. And the third was to not be... We cannot tell you that we will reimburse you for a hotel if you're stuck in the same hotel as him. And we will not agree to unilaterally reimburse you, no matter what you do. It's all on a case-by-case basis, and it's all a very nebulous promise. There was no promise. And in fact, that's why Delta offered, in fact, no accommodation. Delta offered exactly what it offers to every other one of its flight attendants or pilots, and it's in their affidavits. They are allowed to go stay where they want. They are allowed to take whatever transportation they want. But Delta isn't going to pay for it. And that's essentially what Delta told Ms. Caruso. Delta told Ms. Caruso, we will tell you that you can do whatever you want, but we can't promise you that if you're stuck in a hotel with the person you allegedly assaulted you, that you can leave and we'll pay for it. And that's where the undue burden analysis comes in. And Delta's offered no analysis relating to whether or not that burden was undue or not. Let me ask you one question going back to the line of question I was asking. When the Dallas police notified Delta, who in Delta was notified specifically and by what means? Was it just a simple email? Was it a phone call? Was it a report that was sent? Yes, it was an email from the Dallas PD to Wayne Cochran, who was the head of the Delta Pilots Union, also a Delta 30B6 in this case. Okay, but he's the head of the union? Yes. So Delta, Mr. Cochran got in touch with Mr. Lucas to tell him to call the Dallas Police Department, which Mr. Lucas then did. Okay, but if he's the head of a union, how does that put Delta on notice? Did he tell Delta or who else in Delta was informed? Well, Delta's – Mr. Cochran is a managerial employee of Delta. Knowledge can be imputed to Delta once it's told to Mr. Cochran. Through that particular employee? Correct. And that email is in the record, Judge. Okay, thank you. Let's hear from opposing counsel and then you're going to have rebuttal. Thank you, Your Honors. Lisa Burton on behalf of Delta Airlines and I have with me Lorenzo Cavantag. Your Honors, first I'd just like to note that there is absolutely no error in law, there is no error in the facts, and in fact there is no material fact in dispute. And I think this needs to start with the facts that are relevant. Ms. Caruso went out with Mr. Lucas and others on the evening of the 3rd. Ms. Caruso called Delta's OCC, their operations, which is for emergencies, at 1220 at night. She sounded intoxicated when she spoke with Ms. Pestolosi, and we have contemporaneous documents. She also stated at that moment in time that she was looking for Mr. Lucas to hang out. And so let's start with that premise of the knowledge of Delta and Ms. Caruso's claims. Because of that, Ms. Caruso the next morning was subjected to a reasonable suspicion drug and alcohol test. But counsel, we got all that. I think they want to start, and reasonably or not, they want to start at the moment that she first brought it to Delta's attention that she believed that she had been sexually assaulted. Because we understand that she was intoxicated and she had no memory of what happened. Yes, Your Honor, I just needed to make that point. The point here, though, is the first time Delta learns that she thinks it's Mr. Lucas is at the time she files her MCAD charge, which is part of this record. And in that record she states she isn't quite sure, but he's the only male that they were out with. So that's her evidence of suggesting it was Mr. Lucas. In addition, the suggestion that Delta did not conduct an investigation and citing a foresight is misguided. Delta, first... What is the date of the MCAD complaint? That is December, I believe, 18th, 2018. That's the date that the MCAD charge is served. And that's when Ms. Broach, who was her FSM manager at the time, learned for the first time that she thought it was Mr. Lucas. In fact, the record also shows that Ms. Caruso couldn't identify any assailant when she went to the SANE nurse, that she represented to Delta that that SANE investigation was being sent to the state police and then also to the Dallas police. And it also shows that she doesn't know who did anything at that time. And in fact, today still has no memory and is basing it on the discovery in this case. The other piece, to somehow suggest that there was absolutely no investigation, forgets that Ms. Caruso submitted inconsistent statements herself as to what happened. She first says she went to bed, took her medications, couldn't remember anything. When she does tell Ms. Broach that she thinks she might have been the victim of sexual assault, she says she didn't know what happened, that her roommate and she went to the hospital. And then she sends an email that does not identify Lucas or anybody else as the assailant because she didn't know. In addition, at that moment in time, Delta took investigatory steps first to talk to everybody who was out that night to figure out what happened. And what happened with her egregious blowing over of a .079. And when did that happen? That happened within days. Ms. Caruso was asked to provide a statement of everything that happened while she was deadheading, which means when she was taken out of service for the alcohol violation, on her way back to Boston. She then met with her manager, Ms. Broach, who informed her that she had called drunkenly to the OCC. But when Ms. Broach, you said Ms. Broach interviewed everyone who was out that night. Did that interview include Mr. Lucas? They obtained statements, Your Honor. She requested statements, and statements were obtained from Ms. Mercer, Ms. Brown, Ms. Caruso. And by the way, Ms. Caruso never redacted her statement, her first one, where she says, I have no memory and this is what I drank and this is what I did. And they also get a statement from Mr. Lucas. And as noted, and which is also relevant to the ADA claim in case I don't get to it, Delta has a pilot's union and Delta also has a seniority system that governs the whole ADA process. What does Lucas' statement say? Lucas' statement said that he and Ms. Caruso, he took Caruso and Brown back to their room and that, I believe he stated, they hung out. Now that's not inconsistent with what Delta knew at that time, given that Ms. Caruso at 1220 p.m. that night was calling OCC looking for Mr. Lucas to hang out. Does he acknowledge, I'm just trying to get to notice what they were on notice of, does he acknowledge in that statement that they had some kind of sexual contact? No, Your Honor, he does not state that. The first time Delta learns that Ms. Caruso and Mr. Lucas engaged in consensual behavior was when it interviews him. After it had received the MCAD complaint in December, Delta commences the process to interview Mr. Lucas. Delta, because he's, again, a member of a collective bargaining unit, has to have his union representatives present. And again, under that collective bargaining agreement, Delta cannot proceed against Mr. Lucas unless there's just cause. However, they interviewed him with his rep present. There were three people from Delta who interviewed him and found him credible that the interactions were all consensual. That they had gone back to their room, that they engaged in sexual relations. They did not have intercourse, is what he stated. He also states that it was completely consensual between them. Ms. Caruso, again, still has no recollection about that. And the only contemporary statements that we have from Ms. Caruso are that she's looking for Mr. Lucas after he left her room to hang out. And that she's looking for him. Who are the three Delta people who interviewed Lucas? And where in the record will we find those? And what is the date of that interview? That interview, Your Honor, I believe is in January. It is a written statement that you will find in the record that shows that they interviewed him and found him credible. Who is the they? There were three representatives from Delta, as well as Mr. Lucas and his union representative. And that's the question. If you can't give us the names, at least tell us who they were in the Delta hierarchy. There was a person from the pilot's union. There was a person who was from the chief pilot's office, which is Mr. Cochran's office. There also was a representative from human resources who was present at the time. And then the third person, right now I can't remember the level, but they were all senior level individuals. And again, it took over a month to get the meeting arranged through the union. So with regard, again, to the investigation, and let me come back to a key point that Your Honor has made early on. Caruso has waived the question of arguing that Mr. Lucas was a supervisor. As such, we are operating under the new or should have known. So the negligence standard that is set forth in our case law here for an employer to be liable. Moreover, there is nothing Delta could have done to have prevented the alleged event as she describes or claims on August 3rd. Because Delta had absolutely no reason to believe that Mr. Lucas was going to engage in any inappropriate behavior. And in fact, the record is clear that he's never been accused of any inappropriate behavior. He's never been subject to discipline, and the only allegation ever against him was made by Ms. Caruso. So dealing with that standard, once Delta was on notice, since he was not a supervisor, their job was to take proper medial action to make sure no further harassment or other behavior occurred. And in fact, no further ever occurred. And in fact, she admits she never sees him again. And the suggestion that somehow what Delta did wasn't enough doesn't mean that the fact that Delta credits Mr. Lucas is not the fact that we didn't prevent any further issues from happening. In fact, nothing ever happened again. And it's not enough under the case law in this jurisdiction for her to say she disagrees or she thinks Mr. Lucas should have been disciplined. So they're saying that you didn't provide her with anything out of the ordinary. Is it your position that the system that was in place already provided sufficient protection from further harassment, or that you disagree that Delta didn't provide her with an accommodation? I strongly disagree, Your Honor, that Delta didn't provide her with an accommodation. I first want to address the point where they say Delta was somehow negligent in not quickly addressing her request for accommodation. The record shows, Your Honor, that Ms. Caruso puts in her first request through counsel for an accommodation in January of 2019. The record then shows that through counsel they respond and ask her to submit the information. In February, Delta still has not received any information or documents from Ms. Caruso regarding her requested accommodation. So counsel reaches out again and asks for information. And the interactive process really commences. Her first request is that she have a different FSM manager. In fact, Delta granted that accommodation and changed her from Ms. Broach to Courtney Roosevelt. And the reason why, and let's talk about what the accommodation was for. The accommodation was for her alleged PTSD, and so they changed her manager as she requested, which was an accommodation. The next request, which changed, originally she said she didn't want to be on a flight, on a shuttle, or in a hotel with any male who was on that flight. That subsequently, through discussion, gets changed to she doesn't want to be on the same flight with Mr. Lucas. She doesn't want to be in the same hotel, nor does she want to be in the same shuttles. Because of that and the discussions in the interactive process, Delta did try for over a month to communicate directly. Lisa Steffens tried to communicate with Ms. Caruso and Ms. Dubendis about the situation. They never get additional information from Dr. Dubendis. They end up having an interactive dialogue with Ms. Caruso. And what is significant to note here is that Delta provided a list of accommodations. Ms. Caruso wrote back her understanding of them and accepted them. And what they ignore is at the bottom of that document is a statement to Ms. Caruso. And that's the letter of Lisa Steffens from June 2019, or May 2019 to June, that if these aren't working, come back to us. We'll continue the dialogue. In that regards, let me ask you, is there anything in the record, a deposition or an admission or an answer by Ms. Caruso that she was forced to accept these accommodations? I know it's an argument, but that's beneath. No, there's nothing in the record, Your Honor, that she was somehow forced to accept these accommodations. She writes an email that you will see in the record that she says, I understand, these are the accommodations. I'm to do this, I'm to do that. There was also a further dialogue and correction with regard to that process, because to make a point, Delta has over 12,400 pilots. It has over 20,200 FAs. These are all on the record. But the other point that is very clear, and the reason here about the accommodation process, is that during the month of May 2019 alone, there were over 210 changes by FAs, flight attendants, to their assignments. Flight attendants can change their assignments up to 60 minutes before for a domestic flight and 90 minutes for an international. What Ms. Caruso was asking Delta to do, which it could not do, and was an undue hardship, was to say, I'm to do this, I'm to do that. To somehow monitor the system, which it cannot do real time, to prevent her from ever encountering Mr. Lucas. As such, the accommodation provided, given that she has the information, was for her to know the flights. So when she does the bidding, she wouldn't be bidding on any flights that he's qualified to fly on. Right then and there, he's not on those planes. Secondarily, she was provided additional accommodations that other FAs are not provided. That if she, in fact, couldn't swap or drop a flight, or make a change, she was to go work with her FSM, or the manager on duty, to then change the situation, or adopt it, or drop a flight. And in fact, even though Ms. Caruso never requested an accommodation not to fly to Dallas, the day when she comes back to work after, the accommodations had been working fine for almost 10 years. 10 days in a row, she never sees Mr. Lucas, there's never issues, there's never any encounter. She gets upset and says, I can't fly to Dallas. Now again, she never asked for an accommodation not to fly to Dallas or stay at the Hyatt. That day, the manager, and it's in the record, says, you don't have to fly to Dallas. She didn't suffer anything, she appeared distraught, Delta accommodated her. And so to now somehow suggest that Delta did nothing, or offered her other things, simply is wrong. And in the last 30 seconds, I'd at least just like to address the fact that with regard to the accommodation process, it's up to Ms. Caruso to tell us. She doesn't find it acceptable, or if it's not working, to engage. We put forth that the way Ms. Caruso behaved, in particular with her lawyer sending a note after she's already claimed constructive discharge, was not engaging in the process, and she did not meet her burden of engaging in that process. And in fact, her basis of constructive discharge is baseless. I take, I surmise from what opposing counsel said, that he is saying that either she's not engaging in the process, or she's not engaging in the process. And that either implicit or explicit in your accommodation proposal was a statement that either you accept this, or you're terminated. Your Honor, there's nothing of that in the record. Just as there's nothing in the record to suggest that Ms. Caruso was raped, and there's nothing in the record that even remotely suggests that she was given an ultimatum. She participated in a meeting, she had advice of counsel at that time, and there's no evidence. Mr. LeBlanc himself sent the initial letter saying she wants to engage in the ADA accommodation process. There's nothing that comes back or across suggesting that she's been strong-armed to have this accommodation, or some other point. And that should be noted, because Mr. LeBlanc is the one who sends the letter to claim constructive discharge, and gives Delta 22 days' notice to give a, quote, full, you know, about face on the accommodations process. And this is when the accommodations were, in fact, working. She never saw him, and she was never in a hotel or a shuttle with him again. Let me ask you, this is a question I had asked the opposing counsel. He had mentioned that the first notice to Delta was through the pilots union. Is that, in your client's position, notice to Delta, or not notice to Delta? Or when is, if not, when is the first notice to Delta? Delta's position is its first notice is when it gets the MCAD charge. And the date for that again is? And that is December 2018. And it also should be noted that notice, that MCAD document that she files under oath, under the penalties, is that she's not sure. She thinks it's Mr. Lucas, but he's the only person she can think of because he's the only man that went out with him that night. Anything else, Your Honors? So, yes. I'm just trying to pin down some facts here. Counsel said that before your client went into treatment, that Delta was on notice that she needed to file a police report, but did not communicate that to her knowing that she was going to be charged. And that she was going to be in a program where she had no communication with the outside world. Could you just respond to that? Sure, Your Honor. I'd be happy to respond to that. First, Delta is under the impression that Ms. Caruso has filed or was going to file a police report that was on its way to Dallas. That can be found in the communications with regard to honor after the 5th. Well, she doesn't identify Mr. Lucas. She does say she went and saw the SANE nurse. She says the SANE nurse, they were sending it to the state police, and state police were sending it on to Dallas. Second, Ms. Caruso's claims that she couldn't have filed a police report, quite honestly, aren't supported on the record in that these events happened August 3rd through the 5th. After that, Ms. Caruso was required under the DOT and FAA regulations to be seen by a SANE nurse. She is to go back to work or come back to work at Delta. She has to go through what they recommend. Ms. Caruso does not go away for treatment until after August 18th. So there's almost a three-week time span that she could have contacted the police or reported anything, but she doesn't do it. And the reason why her stay or attendance at the program is delayed is because she asked if she could delay it because she wants to do it. She wants to go to her sister's wedding, so it gets delayed. The other piece of fact, which is contradicted by the record and the medical notes by Cornerstone, which are there, show that, one, Ms. Caruso did have contact with folks outside of Delta, outside of Cornerstone. She reached out to Ms. Broach. She reaches out to another person, McNair, who comes and visits her. She reaches out to her father and requests assistance getting a lawyer. She also has in the medical records contemporaneously that the doctors state that because she's claiming that she thought she was the victim of sexual assault and doesn't think she belongs in the facility, there is medical contemporaneous evidence that they say to her, we will help you file a report with the police. And in fact, they say we'll have a counselor with you to assist you in that process. Ms. Caruso doesn't take herself, doesn't take advantage of that and still claims that nobody provided her with that opportunity, even though there was plenty of time between the 5th and the 18th for her to file a claim. And all of that is in the record. All of that is in your record, Your Honor. And just one more question. They also argue that Delta was negligent because it didn't accept the offer to view the hotel video. Your Honor, as noted in this Court's decisions, these are real-time situations that are happening. You can't use hindsight to figure this out. As far as Delta knew and was proceeding, was that it put in a call and asked about the records. Now, I'm not going to sit here and say exactly what happened in that call because I wasn't there and the person who made the call is no longer employed. So therefore, just as you can't say there wasn't a request that the records be kept, you can't make a statement that says that statement wasn't made. What we know is they promptly and immediately set out steps to find it. They reached out to the Hyatt. They had a local person reach out, ask about it. They also had evidence, and this is in the police report, that Ms. Caruso was going up and down the halls in her underwear looking for Mr. Lucas and Emma Brown. And that's in the police report. So to somehow suggest Delta was negligent when it requested statements, it reached out to the Dallas police. It also had a statement from Ms. Caruso after 12-20 saying she's looking for him to hang out. You can't sit here and say we're going to ignore these factors in holding Delta accountable. You have to look at all the factors. And that's why we're not going to say she was negligent, even though under their guidelines, she was in essence terminated subject to reinstatement because of the alcohol violation. Any other questions, Your Honor? Rebuttal? Eric LeBlanc on behalf of appellant Sarah Caruso. My sister just indicated that Ms. Caruso called the emergency line on the night of her assault. The emergency line. And yet there's an assumption that she was calling to hang out. What the emergency line says is Ms. Caruso was incoherent and asking about James Lucas. That's what actually happened, and that's what's in the record. Is there no statement about hanging out? I thought that was in the record also, that she also said she was looking for them to hang out. There's no statement in the OCC record, no. That is from Mr. Lucas's statement, which was given on August 9th. Just to correct one factual point, the interview of Mr. Lucas is at the appendix 25-27. It was not in January. It was April 3rd of 2019, five months after the December MCAD filing, eight months after the October 2018 police call. October 3rd, the police reached out to Delta's corporate security, Lance Mack. On October 12th, Dallas police reached out to Wayne Cochran, the head of the pilots of Delta. In both of those instances, the pilot was mentioned and Mr. Lucas was mentioned by name on October 12th. I'm still trying to understand your theory, because assuming there was some delay in investigating, if there were steps put into place that prevented their having contact with one another, I don't understand how your client was harmed by any delay for whatever reason in an investigation. In our reply brief, we've cited many cases. The cost or the issue of accommodation or keeping people apart cannot be borne by the victim, cannot be borne by the person complaining of sexual harassment, which is what Delta was doing. They were keeping Ms. Caruso out, telling her, you can't come back until we finish this accommodation process. At which point, when it was finished and she returned, yes, there was, I believe, a week or two where they did not interact with each other. But again, the issue isn't just about whether or not they interacted with each other. The issue was the idea of Ms. Caruso at any time potentially going into a hotel with her alleged attacker or getting on a flight with her alleged attacker and Delta not being willing to do anything to ameliorate those concerns. They didn't. What they did was they told Ms. Caruso, you can modify your behavior, but we don't have to modify ours. And that's not fair and that's not what the law requires. The law requires Delta to take affirmative action. And Delta did not do that. I see my time is over. Any other questions? Let me ask you another question. Ms. Caruso's intoxication, that was not caused by the sexual aggressor, correct? Well, if you read the record, the sexual aggressor was purchasing drinks for all of the flight attendants all night long. That's in the record. Ms. Caruso drank those drinks. But again, the issue really comes down to and reasonable inferences have to be taken in Ms. Caruso's favor here. So yes, she drank. She woke up the next morning still blowing a high blood alcohol content. There's no question that she was under the influence at the time of the sexual activity. So there is a question and inference that can be made that it was not consensual. Okay. Dyslynch, anything else? No. Okay. Thank you very much. Court then is adjourned until tomorrow.